IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| B.J., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:22-cv-120-CHW |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | Social Security Appeal |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of the Social Security Administration denying Plaintiff B.J.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals.

As discussed below, the ALJ failed to address an evident worsening in Plaintiff's condition in late 2020, as established by the records of Dr. Crystal Brown and Dr. Kevin Stevenson, two treating physicians. Because the ALJ did not adequately assess this important evidence, and because the opinions of non-examining, state agency medical sources cannot alone amount to substantial evidence in support of the Commissioner's decision, Plaintiff's case must be **REMANDED** for a reevaluation of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff B.J. applied for Title XVI disability benefits in January 2020, alleging disability beginning in September 2014 due to a spinal nerve condition or degenerative discogenic disorders. (R. 64, 68). After Plaintiff's application was denied initially and on reconsideration at the state-agency level of review, Plaintiff sought further review before an administrative law judge or ALJ.

1

In April 2021, the reviewing ALJ held a hearing at which counsel for Plaintiff argued that an August 2020 MRI study (R. 471) post-dating the state agency review process had revealed new signs of "severe spinal canal stenosis as well as bilateral severe neuroforaminal encroachment." (R. 37). In addition to this updated medical imaging study, counsel cited subsequent records from Dr. Crystal Brown, a family practice physician, and Dr. Kevin Stevenson, a neurosurgeon, which indicated that Plaintiff's condition had worsened such that she had failed conservative forms of treatment for pain management, that she had severe mobility and exertional limitations, and that future surgical intervention would be required. (R. 37).

In June 2021, the ALJ issued an opinion finding that Plaintiff was not disabled. (R. 17-28). In so finding, the ALJ rejected the opinion of Dr. Brown and did not address the opinion of Dr. Stevenson, but found "partially persuasive" the opinion of non-examining state agency medical reviewers. (R. 25). Although the ALJ asserted that the objective medical record supported an RFC of light work with limitations, the ALJ did not address the evident worsening of Plaintiff's condition as established by Plaintiff's treatment records beginning in late 2020. Because the ALJ failed to address this important evidence that was not available to the state agency medical reviewers, and because, in any event, the opinions of non-examining sources cannot alone amount to substantial evidence, *Storey v. Berryhill*, 776 F. App'x 628, 635 (11th Cir. 2019), Plaintiff's case must be remanded to the Commissioner for a reevaluation of Plaintiff's disability status during the entirety of the period under consideration.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

In January 2015, Plaintiff sought care at the Medical Center of Central Georgia for chronic lower back pain. (R. 352). An x-ray study then revealed normal height and alignment of Plaintiff's

lumbar vertebral bodies and no evidence of any facture. (R. 354). Plaintiff was discharged with instructions to treat with ibuprofen, along with Flexeril for any breakthrough pain.

Thereafter, in late 2015, Plaintiff began to treat with Dr. Crystal Brown at Brown Family Practice. Dr. Brown initially noted that Plaintiff had "No Active Problems" apart from reported lower back pain, for which Dr. Brown prescribed ibuprofen along with hydrocortisone and a muscle relaxer. (R. 627–29). In November 2015, Dr. Brown noted that "[n]o lower extremity weakness was observed" and that straight leg testing revealed negative results bilaterally. (R. 628). In December 2015, Dr. Brown again noted "[n]o lower extremity weakness," but upon Plaintiff's continued reports of pain, Dr. Brown prescribed a limited regime of Tramadol. Dr. Brown also ordered updated imaging studies that revealed signs of moderate canal stenosis at the L4-5 site, and mild disc bulging at the L5-S1 site with an abutment of the S1 nerve root. (R. 357–58). In February 2016, Dr. Brown referred Plaintiff for consultation with a neurosurgeon. (R. 622).

It does not appear that Plaintiff followed up on Dr. Brown's neurological referral until June 2020, when Plaintiff treated with Dr. Kevin Stevenson. (R. 448). Dr. Sevenson recommended additional imaging studies, but he found, on testing, that Plaintiff had "5/5 motor power," "[n]egative straight leg raise bilaterally," a normal gait and station, and some diminished sensation at the L4, L5, and S1 vertebral sites. (R. 450).

In the intervening period, Plaintiff continued to see Dr. Brown at Brown Family Practice. Dr. Brown treated Plaintiff with Gabapentin and ibuprofen, with "[n]o side effects on medication" and with "70 percent pain controlled." (R. 599, 603, 616). Dr. Brown also observed that Plaintiff had "normal 5/5 strength" in both hands, and "normal 5/5" strength in the upper extremities, and no lower extremity weakness, but that Plaintiff had some abnormal flexion in the cervical spine, as well as abnormal flexion and rotation in the thoracolumbar spine. (R. 607).

At times, Dr. Brown's course of treatment focused on impairments unrelated to arthralgias, such as a urinary tract infection with associated blood loss and dysuria, a vitamin B12 deficiency, and acute recurrent sinusitis. (R. 578, 589). Dr. Brown's records additionally evince a degree of variability in or worsening of Plaintiff's arthralgia symptoms. For example, during an appointment in January 2020, Dr. Brown observed "[r]ight lower extremity weakness." (R. 559). Similarly, a treatment note from a July 2019 appointment describes Plaintiff's pain as "constant" and "not controlled." (R. 565). Several treatment notes clearly indicate that Plaintiff's pain was exacerbated by functional tasks such as stooping, bending, or lifting. (R. 532, 544).

In August 2020, Dr. Brown provided a medical source statement in which she indicated that Plaintiff's radiating lower back pain would significantly limit Plaintiff's functionality such that Plaintiff would be limited to only infrequent standing and walking, and to manipulating weights of only five pounds or less. (R. 454). Dr. Brown also indicated that Plaintiff suffered from extreme levels of pain that would result in a loss of concentration 70% of the time, and that would require Plaintiff to be able to elevate her legs and to lie down at will throughout the day. (R. 455).

Also in August 2020, Dr. Kevin Stevenson conducted updated medical imaging studies at Houston Healthcare. A lumbar MRI revealed severe stenosis at the L4-L5 vertebral site, severe neural foramina encroachment at the L4-L5 site with impingement of the L4 nerve roots, and a circumferential disc bulge with disc herniation at the L4-L5 site. (R. 471-72). Dr. Stevenson provided Plaintiff with an L5-S1 epidural steroid injection in August 2020 (R. 459), but it "provided her no relief." (R. 461). Thereafter, at an October 2020 treatment session, Dr. Stevenson explained that Plaintiff had "failed nonoperative treatment," that her condition was "getting progressively worse," and that surgical intervention was needed. (R. 462).

Plaintiff also reported "axial neck pain and left upper extremity radiculitis" to Dr. Stevenson in August 2020, which Dr. Stevenson attributed to the C6 vertebral region. (R. 465). Prior medical imaging of Plaintiff's cervical spine had revealed signs of degenerative disc disease, particularly regarding a possible disc space narrowing at the C5-C6 vertebral site. (R. 417, 420). Dr. Stevenson's notes expressed a hope that Plaintiff's L5-S1 translaminar steroid injection would also alleviate her cervical spine pain, but again, the record shows that Plaintiff's steroid injection "provided her no relief." (R. 461).

The last available medical records document Plaintiff's continued treatment, in 2020 and 2021, with Dr. Brown, who repeatedly observed both that Plaintiff's pain caused a "[d]ecreased concentrating ability" (R. 507, 528, 653), and that Plaintiff's pain and other symptoms were "not controlled on current medication." (R. 511, 644). Dr. Brown noted that Plaintiff had left shoulder pain and numbness (R. 507, 516), as well as lumbar tenderness (R. 650) and "unrelenting" pain that radiated in a "shocklike sensation to the right foot." (R. 378). According to Dr. Brown's treatment notes, which correspond to her earlier opinion letter, these symptoms left Plaintiff "[u]nable to lift more than 5 lbs," "[u]nable to stand for more than 5 min," and "unable to sit for more than 30 min." (R. 521, 645). Dr. Brown explained that Plaintiff's symptoms primarily were "[r]elieved by lying down." (R. 520).

### DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 22, 2020, her application date. (R. 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease [of the] lumbar spine with radiculopathy, degenerative disc disease [of the] cervical spine,

hypertension, and obesity. (R. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform light work with the following limitations:

> [She] is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. She can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to wetness. The claimant should avoid concentrated exposure to hazards such as unprotected heights.
>
> (R. 21)

Based on this RFC finding, the ALJ determined at step four that Plaintiff was unable to perform her past relevant work as a nurse assistant. (R. 26). At step five, though, the ALJ found that Plaintiff could adjust to the requirements of other jobs such as marker, routing clerk, grader/sorter, document clerk, inspector/tester, and final assembler. (R. 27). Accordingly, based on this step five finding, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Before this Court, Plaintiff argues that the ALJ's RFC assessment fails to account for Plaintiff's extremity limitations, whereas the Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence. For any given social security claimant, an RFC assessment is meant to accommodate "the most you can do despite your limitations" for the entirety of the period under consideration. 20 C.F.R. § 416.945(a)(1). In this case, the medical record indicates that in late 2020, Plaintiff's condition worsened such that she may have suffered from greater corresponding functional limitations. Because the presiding ALJ did not directly address this

7

evident worsening, and because it is not clear that substantial evidence supports the ALJ's RFC from late 2020 through the date of the ALJ's decision, June 29, 2021, Plaintiff's case must be remanded for a reevaluation of the evidence.

Regarding the worsening of Plaintiff's condition, Dr. Kevin Stevenson, a neurosurgeon, ordered an updated MRI study in August 2020, and that study showed "severe spinal stenosis at L4-L5 from [a] disc bulge," along with "severe neural foramina encroachment right worse than left with impingement exiting [the] bilateral L4 nerve roots." (R. 471). This study differed markedly from an earlier 2016 MRI study that showed only moderate stenosis and mild disc bulging with no nerve-root impingement. (R. 358). The objective medical evidence thus shows a significant change in Plaintiff's condition in late 2020 which the ALJ did not directly address. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("the ALJ must consider the applicant's entire medical condition").

The state-agency medical reviewers did not have access to Plaintiff's August 2020 MRI or to any ensuing medical records because they evaluated Plaintiff's case initially in May and June 2020 (Ex. 2A), and then on reconsideration in July 2020 (Ex. 4A). The opinions of non-examining sources cannot alone amount to substantial evidence, *Storey v. Berryhill*, 776 F. App'x 628, 635 (11th Cir. 2019), but the inability of the state-agency reviewers to observe the change in Plaintiff's condition makes the ALJ's partial reliance on those sources (R. 25) particularly problematic.

Additionally, the ALJ's evaluation of the opinions of Dr. Stevenson and Dr. Crystal Brown, Plaintiff's primary care physician, was also deficient. Given Plaintiff's January 2020 filing date, the ALJ was not presumptively required to defer to these sources' opinions under the "treating physician rule," *see Harner v. Comm'r*, 38 F.4th 892 (11th Cir. 2022), but the ALJ was required to

explain her analysis under 20 C.F.R. § 404.1520c, with a particular emphasis on the factors of consistency and supportability.

The ALJ did not address Dr. Stevenson's opinion, given in October 2020, that Plaintiff's condition was "getting progressively worse," and that Plaintiff had "failed nonoperative treatment." (R. 462). Dr. Stevenson's opinion is consistent with Dr. Brown's opinions and findings, given from August 2020 through the remainder of the period under consideration, that Plaintiff's pain and other symptoms were "not controlled on current medication," (R. 511, 644), including an unsuccessful attempt to manage those symptoms with an epidural steroid injection. The congruence between (a) Plaintiff's August 2020 MRI study, (b) Dr. Stevenson's October 2020 opinion, and (c) Dr. Browns's opinions from August 2020 on, suggests that Dr. Brown's opinion should score highly on the factor of "consistency." *See* 20 C.F.R. § 404.1520c(c)(2).[1] Again, to the extent that the state agency medical reviewers offered different findings, those state agency reviewers did not have access to Plaintiff's medical file from August 2020 and later. Hence, the state agency medical reviewers were not aware of Plaintiff's "progressively worse" condition.

A similar analysis applies to Dr. Brown's own records regarding the issue of "supportability." *See* 20 C.F.R. § 404.1520c(c)(1).[2] Although Dr. Brown's earlier treatment records included observations of "[n]o lower extremity weakness" and "normal 5/5 strength" in the upper extremities (R. 607), Dr. Brown observed some worsening of Plaintiff's symptoms by January 2020 (R. 559) ("Right lower extremity weakness"), and then a significant worsening of Plaintiff's symptoms by August 2020, contemporaneously with Plaintiff's updated MRI study. (R. 454–55).

---

[1] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

[2] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

Thereafter, during continued treatment in late 2020 and throughout 2021, Dr. Brown repeatedly observed that Plaintiff's symptoms were "not controlled on current medication" (R. 511, 653), that Plaintiff's symptoms included radiating, "unrelenting" pain that interfered with Plaintiff's ability to concentrate (R. 507, 528, 649–650, 653), and that Plaintiff suffered from significant exertional or postural limitations that primarily were "[r]elieved by lying down." (R. 520–21, 645). Dr. Brown's records are thus internally supported. Although Dr. Brown's findings changed, that change was predicated on a documented decline in Plaintiff's condition over time, rather than any inconsistency between Dr. Brown's own diagnoses or conclusions.

To summarize, it is not clear that substantial evidence supports the ALJ's RFC finding for the period beginning around August 2020, and running through the date of the ALJ's decision in June 2021. The state-agency medical reviewers lacked access to the medical evidence from this period, and the ALJ failed to address the evident decline in Plaintiff's condition during the period. Accordingly, because substantial evidence does not support the ALJ's decision, Plaintiff's case must be remanded for a reevaluation of the evidence.

## CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** that Plaintiff B.J.'s case be **REMANDED** to the Commissioner for a reevaluation of the evidence pursuant to 42 U.S.C. § 405(g). On remand, the Commissioner should reassess whether the existing RFC adequately accounts for Plaintiff's functional capacity beginning in August 2020, given the evident signs of Plaintiff's worsening condition during this period.

**SO ORDERED**, this 22nd day of February, 2023.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge
